IRVING, J.,
for the Court.
¶ 1. Dana J. and Ginger Studdard were divorced on the grounds of irreconcilable differences, and Ginger was awarded legal and physical custody of the parties’ two minor children. The parties submitted the issues of division of marital assets and debts to the chancellor for resolution, and after a bench trial on the matter, the chancellor divided and distributed the marital assets. Aggrieved by the chancellor’s decision, Ginger presents the following issue for our review: whether the chancellor in the lower court abused his discretion by failing to accept testimony as to the values of both personal and real property, and therefore, failed to properly divide assets of the marriage in an equitable fashion. Finding no reversible error, we affirm the chancellor’s ruling.
FACTS
¶ 2. The Studdards were married in September 1991 and were separated on March 2, 2001. They were divorced on June 12, 2003.
¶ 3. An extended recitation of the facts is not necessary to adequately address the issue raised in this appeal; therefore, we discuss only such facts as are necessary to properly resolve the issue presented, that is, whether the chancellor failed to equitably divide the marital estate because he refused to accept Ginger’s testimony regarding the value of several items of the marital estate. At the outset, we observe that the marital estate was not comprised of any ongoing business or unusual or unique asset which might require expert testimony to arrive at its value. Further, we note that neither Ginger nor Dana *617 offered any experts to assess the value of any items of the estate.
¶ 4. In making his division of the marital estate, the chancellor relied essentially on the values set forth by the parties in their financial disclosure statement required by Rule 8.05 of the Uniform Chancery Court Rules. He also took into consideration the parties’ testimony regarding the values which each of them placed on the marital assets, being careful to note and explain any discrepancies which he found between their testimony and their disclosure statement.
¶ 5. At the conclusion of the trial, the chancellor determined that the marital estate consisted of (1) an undivided one-half interest in thirty-three acres of land valued at $30,000, (2) an eleven-year-old mobile home valued at $5,000, (3) household goods and other tangible personal property, valued at $25,000, in Ginger’s possession, (4) household goods and other tangible personal property, valued at $1,000, in Dana’s possession, (5) proceeds from the sale of 202 shares of UPS stock owned by Dana and valued at $ 9,000, (6) fifteen shares of UPS stock owned by Dana and valued at $660, (7) a 1996 Ford pickup, valued at $3,500, in Dana’s possession, (8) proceeds from the sale, by Ginger after the separation, of a Buick Century automobile,[1] (9) a 2001 Dodge automobile, valued at $2,500, in Ginger’s possession, and (10) each party’s separate checking account.[2]
¶ 6. The chancellor valued the marital estate at $75,660. After arriving at the value of the marital estate, the chancellor considered the Ferguson[3] factors before making a division of the estate. Ginger was awarded $15,000 for her interest in the land, $2,500 for her interest in the mobile home, and $4,830 for her interest in the UPS stock, both sold and presently existing. She was also charged with and awarded the household goods and other tangible personal property, valued at $24,000, in her possession. However, Dana was awarded $12,000 for his interest therein. Dana was also awarded the 1996 Ford pickup, and Ginger was awarded the Dodge Intrepid. Dana was charged with personal property, valued at $1,000, in his possession and given credit of $1,000 for his interest in the Buick Century which Ginger sold. Dana was also awarded the one-half interest in the thirty-three acres of land and the mobile home, subject to credits of $15,000 and $2,500, respectively, for Ginger’s interest in the land and mobile home. He was also awarded the fifteen shares of stock. Each party was awarded the other tangible, personal property in his/her possession. After the credits were applied, Dana was ordered to pay Ginger $10,330 in twenty-one monthly installments. Ginger was also given the option of taking the mobile home instead of the monetary award of $10,330. Each party was awarded their respective checking accounts and each remained liable for his/her respective debts. Additional facts will be related during our discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. Ginger contends that the chancellor abused his discretion in failing to *618 accept her testimony as to the value of the parties’ personal and real property, and therefore, failed to properly divide the assets of the marriage in an equitable fashion. Ginger also contends that the chancellor erred in failing to grant her some debt relief. Dana, however, maintains that the chancellor did not abuse his discretion in awarding and valuing the parties’ assets.
¶8. ‘“[An appellate court] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.’ ” Messer v. Messer, 850 So.2d 161, 167(¶23) (Miss.Ct.App.2003) (quoting Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). “ ‘Such division and distribution will be upheld if it is supported by substantial credible evidence.’” Messer, 850 So.2d at 167(¶23) (quoting Bunyard v. Bunyard, 828 So.2d 775, 776(¶ 5) (Miss.2002)). “[An appellate court] is charged with determining whether the entire property division was equitable, not whether each marital asset was equitably divided.” Tillman v. Tillman, 716 So.2d 1090, 1095(¶25) (Miss.1998). Therefore, “the chancellor’s decision regarding the division of marital property should be viewed as a whole in determining whether he abused his discretion.” Id. at 1094(¶ 19). Further, a chancellor has considerable latitude in adjusting his awards in order to achieve an equitable result. Id. (citing Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)).
¶ 9. A review of the record reveals that the chancellor adequately followed the guidelines articulated in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994) in his analysis and division of the marital property. The record further reveals that before distributing the property, the chancellor carefully applied the Ferguson factors to the specific facts of this case and thoroughly considered the financial and domestic contributions of each party. The chancellor also took into consideration the fact that a third party would be affected by his decision regarding the disposition of the land, that Ginger had' already taken a substantial number of household goods from the home, that Dana had fully paid the joint marital debt existing at the time of the parties’ separation, and that other expenses and debt incurred by Ginger after the separation were due to a number of major purchases of goods that she had made after the separation of the parties and had in her possession at the time of trial. The chancellor also noted that both parties were capable of being self-supporting and earning substantial incomes. As a result, we find that the overall property division reveals that Ginger received an equitable division of the marital property, and there was no manifest error in the chancellor’s distribution of the parties’ assets.
¶ 10. Ginger also contends that neither party introduced appraisals nor third party testimony concerning the valuations of the property, and the chancellor accepted each party’s valuation without further evidence. “The valuation of property is a question of fact.” Messer, 850 So.2d at 170(¶ 42) (citing Ward v. Ward, 825 So.2d 713, 719(¶21) (Miss.Ct.App.2002)). “ ‘[M]atters of fact are within the chancellor’s discretion and will not be reversed absent a finding that the chancellor was manifestly wrong.’ ” Id. Here, neither party offered expert testimony as to the value of the property, and the chancellor derived a value for the property based primarily upon the Rule 8.05 declarations of the parties.[4] “ ‘To the extent that fur *619 ther evidence would have aided the chancellor in [his] decision, the fault lies with the parties and not the chancellor.’ ” Messer, 850 So.2d at 170(¶ 43) (quoting Ward, 825 So.2d at 719(¶ 21)). Dana properly advances that “when a chancellor makes a valuation judgment based on proof that is less than ideal, it will be upheld as long as there is some evidence to support [the chancellor’s] conclusion.” Messer, 850 So.2d at 170(¶ 43) (citing Dunaway v. Dunaway, 749 So.2d 1112, 1121(¶ 29) (Miss.Ct.App.1999)). The record indicates that the chancellor appears to have fully explored the available proof and arrived at the best possible conclusion considering the evidence submitted by the parties. Therefore, this issue lacks merit.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS AND BARNES, JJ, CONCUR.' ISHEE, J., NOT PARTICIPATING.

.Neither party testified as to the amount of the sale proceeds, and although, the chancellor listed the Buick Century as a marital asset and gave Dana a credit of $1,000 for his interest in the Buick, it is unclear how the chancellor arrived at this figure. Perhaps, he used the purchase price figure to make the valuation. Ginger testified that Dana paid $1,000 for the Buick. Nevertheless, the vehicle was sold by Ginger after the parties' separation, and she kept the sale proceeds.

. Ginger declared $181 and Dana declared $500 in their respective checking accounts.

. Factors set forth in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).

. The chancellor noted that the parties' Rule 8.05 declarations were "very unspecific," and that the parties presented conflicting testimony as to the value of the property.