900 So.2d 1217 (2005)
Karl BEASLEY, Appellant,
v.
Katrina SCOTT, Appellee.
No. 2004-CA-00209-COA.
Court of Appeals of Mississippi.
April 19, 2005.
*1218 J. Mark Shelton, Jana L. Dawson, Tupelo, attorneys for appellant.
*1219 John Stannard Farese, Ashland, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. On May 7, 1999, Victoria Scott was born to Katrina Scott. At times prior to and after Victoria's birth, Karl Beasley was notified that he could be Victoria's father. In February 2001, Katrina filed a complaint for paternity in the Lee County Chancery Court and, after DNA testing, it was determined that Karl was in fact Victoria's father. On October 15, 2002, Karl filed a complaint for child custody and emergency relief. On November 22, 2002, the chancellor adopted the parties' agreement, namely that Katrina be awarded temporary primary physical custody and that Karl be awarded reasonable visitation. The chancellor also stated that all other issues in Karl's complaint be held in abeyance until further order.
¶ 2. Katrina filed a counter-petition for child custody on May 7, 2003, asking inter alia for sole primary legal and physical custody of Victoria. Another order was entered on June 4, 2003, which set forth additional visitation for Karl and which also stated that all other issues in Karl's complaint be held in abeyance until further order. A hearing on the matter was held December 4, 2003, and a final decree was signed nunc pro tunc on January 20, 2004. In the final order, the chancellor awarded Katrina custody of Victoria, set visitation, and awarded child support to Katrina. Karl now appeals to this Court asserting that the chancellor erred in awarding physical custody of Victoria to Katrina and in ruling that Karl was precluded from contesting permanent physical custody as a result of entering into an agreed order which awarded temporary custody to Katrina. Finding no error, we affirm.

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR IN AWARDING PRIMARY PHYSICAL CUSTODY OF VICTORIA TO KATRINA?
¶ 3. In this issue, Karl argues that the proof presented during the trial fails to support the chancellor's findings as to the Albright factors. The standard of review in child custody cases is similar to the standard in all domestic relations cases. A reversal is proper if the chancellor is manifestly in error or has applied an erroneous legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995). Appellate courts need only to determine if the chancellor's decision was supported by credible evidence. Lee v. Lee, 798 So.2d 1284(¶ 22) (Miss.2001).
¶ 4. It is well settled that in child custody cases, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The factors used to determine what is in the "best interests" of a child with regard to custody are: (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; *1220 and (11) other factors relevant to the parent-child relationship. Id.
¶ 5. However, an appellate court must find a chancellor in error where the chancellor improperly considers and applies the Albright factors. Hollon v. Hollon, 784 So.2d 943(¶ 11) (Miss.2001). In determining whether the chancellor abused his discretion in applying the Albright factors, the appellate court "reviews the evidence and testimony presented at trial under each factor to ensure [the chancellor's] ruling was supported by record." Hollon, 784 So.2d at ¶ 13.
¶ 6. We must now review the evidence and testimony presented at trial under each Albright factor to determine whether the ruling by the chancellor was supported by the record.

Age, health and sex of the child
¶ 7. Victoria was born in 1999. There was testimony that Victoria, although having problems with diaper rash in the past, was a healthy girl. Karl testified that he thought Victoria was too skinny, but by most accounts Victoria has a good appetite, and Katrina herself was a smaller child. The chancellor examined photos of Victoria at various ages and determined her to be happy and healthy. In regards to Victoria's age, four and a half years, and sex, female, the chancellor weighed this factor in favor of Katrina. We find that the record supported the chancellor's decision that this factor favors Katrina.

Continuity of Care
¶ 8. In regards to this factor, the chancellor noted that Victoria's birth was the result of a one night stand and, as a result, the parents never lived together. Katrina has taken care of Victoria since birth, and Karl began his visitation with Victoria in November 2001, only after paternity was established. Although Katrina has given Karl extra visitation, the chancellor found that this factor favored Katrina. We find that the record supported the chancellor's decision that this factor favors Katrina.

Parenting skills and willingness and capacity to provide primary child care
¶ 9. The chancellor noted that this factor was difficult. There were allegations that Victoria sometimes appeared dirty and unkempt. There were also allegations that Karl was overbearing and controlling. Karl testified that he had a good rapport with Victoria and treated her just like he treated his other daughter, Madison, with his current wife, Michelle. Karl has a good home and a good job. Karl stated that he was willing to provide for Victoria. On the other hand, Katrina had been taking care of Victoria for two and a half years before Karl even began his visitation. Although Katrina struggled to maintain a home environment for Victoria and did not always exhibit the best judgment in regards to her association with men, Katrina stated that she has finally established a good job for herself and a good home for herself and Victoria. According to the record, although Katrina kept Victoria in day care while she worked, Victoria would also have to be put in day care while Karl worked. The chancellor was not convinced that Karl would even get to see Victoria enough and, considering the above testimony, he weighed this factor in favor of Katrina. We find that the record supports this finding.

The employment of the parent and the responsibilities of that employment
¶ 10. Katrina testified that she had a good job at the time of the trial, but since Victoria was born in May 1999, Katrina has had at least seven jobs, most of which she left without notifying her employers. Karl, on the other hand, has worked at Cooper Tire for eleven years and makes a good living. Karl works seven out of fourteen days with twelve-hour shifts. The *1221 chancellor weighed this factor in favor of Karl and, according to the record, we find that decision is supported with ample evidence.

Physical and mental health and age of the parents
¶ 11. Both Karl and Katrina were thirty-three years old at the time of the trial and both were in good health. According to the record, Katrina had been on antidepressants after Victoria's birth for postpartum depression, but Katrina had not taken any for some time. The chancellor weighed this factor equally between Katrina and Karl. We find that the record supports this finding.

Emotional ties of the parent and child
¶ 12. There was ample testimony of the close emotional bond between Katrina and Victoria. According to the record, the only testimony of the emotional bond between Karl and Victoria was that she called him `daddy' and that Karl was good at disciplining her. The chancellor found this factor weighed in favor of Katrina, and we find so as well.

Moral fitness of the parents
¶ 13. There was ample testimony that Katrina drinks alcohol and occasionally smokes marijuana. However, there was no testimony that Katrina ever did these things in front of Victoria. Katrina lived with her boyfriend at one point and has had relationships, platonic and otherwise, with men of dubious character. In February 2002, Katrina pled guilty to a DUI. On the other hand, Karl testified that, although he drank alcohol in the past, he has not imbibed since marrying Michelle. The chancellor found Karl to be more morally fit than Katrina, and we find that the record supports this finding.

The home, school and community record of the child
¶ 14. Victoria is not currently in school, nor does she have any community involvement. Victoria has been in the same day care for two and a half years while in Katrina's custody. If Victoria was in Karl's custody, she would also be placed in day care a majority of the time. The chancellor noted the day care situation and found this factor to be equal between Katrina and Karl. We find the record supports this determination.

The preference of the child at the age sufficient to express a preference
¶ 15. As Victoria is only four years old, the chancellor found that this factor was inapplicable, and we find the same.

Stability of the home environment and employment of each parent
¶ 16. As previously noted, Katrina's home and job history are unstable. There were allegations that Katrina is not competent as a housekeeper. On the other hand, Karl has a stable job. Karl owns his own home and pays his bills on time. The chancellor found this factor to favor Karl, and we find ample support in the record to support the chancellor's determination.

Other factors relevant to the parent-child relationship
¶ 17. In discussing this factor, the chancellor made several points. First, the chancellor found a stable influence in Karl's parents marriage of over thirty years. Karl's parents visit regularly. The chancellor noted that Karl and Michelle have both been divorced twice and that DHS had been investigating them because of some allegations involving Michelle's children from a previous marriage. The chancellor also stated that he was impressed with the testimony of Katrina's mother, Betty Saxon. Ms. Saxon is very involved in Victoria's life, helping babysit and taking her to church. There was testimony that Katrina used foul language on occasion and the chancellor cautioned her *1222 to cease speaking in such a manner, especially in front of Victoria.
¶ 18. Lastly, the chancellor noted that in the agreed temporary ordered entered into by the parties temporary custody was given to Katrina. The chancellor found this important because Karl agreed to this arrangement after many of the incidents relating to Katrina's employment and character occurred. Karl knew that Katrina had already moved seven times and been involved with various men before he agreed to give her temporary custody of Victoria.
¶ 19. After weighing all the factors, the chancellor found the best interest of Victoria would be served by granting primary custody to Katrina. In reviewing the record, we find that the chancellor's decision was supported by the record and, thus, we affirm.

II. DID THE CHANCELLOR ERR IN RULING THAT KARL WAS PRECLUDED FROM CONTESTING PERMANENT PHYSICAL CUSTODY AS A RESULT OF ENTERING INTO AN AGREED ORDER WHICH AWARDED TEMPORARY CUSTODY TO KATRINA?
¶ 20. In his other issue, Karl argues that the chancellor erred in ruling that Karl was precluded from contesting permanent physical custody as a result of entering into an agreed order which awarded temporary custody to Katrina. Karl states that because he entered into an agreement to allow Katrina temporary custody, then he should not be precluded from seeking permanent custody of Victoria. In his ruling, the chancellor stated that he felt it was important that Karl granted Katrina temporary custody even though Karl claims Katrina is a terrible mother. However, if the chancellor had determined that this temporary order precluded Karl's right to seek permanent custody, then we fail to see why the chancellor would have ordered a trial, heard witnesses, including Karl, and delivered a lengthy final opinion in which he gave detailed findings on each Albright factor. In his opinion the chancellor states on numerous occasions that his job was to determine what was in Victoria's best interest, not whether Karl was precluded from seeking permanent custody. We find no merit to this issue.
¶ 21. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.