GRIFFIS, P.J., for the Court:
¶ 1. Robert Earl Kimbrough and Bobbie Sue Kimbrough agreed to a divorce based on irreconcilable differences. They submitted to the chancellor the issues of property division and custody of their five-year-old daughter, Kaitlin Suzanne Kimbrough. The chancellor divided the marital property and awarded sole physical custody of the daughter to Robert, with joint legal custody and visitation awarded to Bobbie Sue. Bobbie Sue now appeals the award of custody to Robert and certain parts of the property division. Robert cross-appeals and contests other parts of the property division. We find no reversible error and affirm.
FACTS
¶ 2. Robert and Bobbie Sue were married on April 12, 2002. Bobbie Sue had a *718 son from a previous relationship, named Drew, who was born on September 21, 1995. Robert and Bobbie Sue had a daughter, Kaitlin, who was born on July 30, 2003.
¶ 3. They separated in July 2007. Bobbie Sue filed for divorce that same month.
¶ 4. Prior to the marriage, Robert owned a tract of land in Saltillo, Mississippi. Robert’s house and his business, a motorcycle-repair shop called the “Motorcycle Doctor,” were located on the property. During the marriage, Robert, Bobbie Sue, Drew, and Kaitlin lived in the house, and Robert continued to operate his business.
¶ 5. Robert and Bobbie Sue decided to make additions to the house and took out a mortgage for that purpose in the amount of $56,000. Over the next twenty-two months, prior to their separation, they each paid $200 a month on the mortgage. Bobbie Sue’s payments totaled $4,400.
¶ 6. In the property division, the chancellor classified the house as marital property and determined the equity to be $166,000. The chancellor awarded the house to Robert and awarded Bobbie Sue $4,400 as her equitable interest, to be paid by Robert in cash. The chancellor classified the business as Robert’s separate property.
¶ 7. Robert and Bobbie Sue also owned several pieces of personal property. Prior to the marriage, Robert acquired a 2001 GMC Sierra pickup truck, a 1992 Chevrolet Motorcoach, and a 2000 Suzuki four-wheeler. The chancellor classified these items as marital property. Robert’s Rule 8.05 financial disclosure statement valued the truck at $32,000, the motorcoach at $35,000, and the four-wheeler at $6,000. Robert now claims that the “values” he listed in his disclosure were the prices he had paid for the items, not his estimate of their current value, which would be considerably less. The chancellor adopted the values used in Robert’s disclosure and awarded the items to Robert, with a one-half equitable interest to Bobbie Sue, to be paid by Robert in cash. The effect was that the parties split the equity in these items for a total of $36,500 each.
¶ 8. During the marriage, Robert and Bobbie Sue acquired a 2002 GMC Yukon, a pontoon boat, a camper, a tractor, a die machine, and a lift board. The chancellor classified these items as marital property. The Yukon was valued at $10,000. The boat and camper, collectively, were valued at $9,000. The tractor was valued at $4,500. The die machine and lift board, collectively, were valued at $1,741. The chancellor awarded the Yukon, the boat, and the camper to Bobbie Sue with no equitable interest to Robert. The chancellor awarded the tractor, die machine, and lift board to Robert with a one-half equitable interest to Bobbie Sue, to be paid by Robert in cash. For these items, Bobbie Sue received $22,120.50 of the equity, while Robert received $3,120.50.
¶ 9. Bobbie Sue had a 401(k) retirement account through her employer, Mac’s Tires. The chancellor classified the account as marital property. He determined the value of the account was unknown, even though Bobbie Sue had testified that it was worth between $8,000 and $11,000. The chancellor awarded the account to Bobbie Sue with no equitable interest to Robert.
¶ 10. To summarize the property division, excluding the 401(k), the chancellor determined the marital property had a total value of $264,241. Robert was awarded assets valued at $201,220.50, and Bobbie Sue was awarded assets valued at $63,020.50.
¶ 11. Most of the testimony, during a lengthy trial, focused on the issue of who would have custody of Kaitlin. Four main *719 points were developed. First, both Robert and Bobbie Sue had substance-abuse problems. During Uhe marriage, Robert drank several beers daily, while Bobbie Sue smoked marijuana daily. Both claimed to have stopped after the separation. Second, Robert’s witnesses testified that he was the more attentive of the two parents and that he was the primary caregiver. Bobbie Sue’s employment at Mac’s Tires required her to be at work from approximately 8:80 a.m. to 5:00 p.m. five days a week, while Robert’s self-employment at the Motorcycle Doctor gave him greater flexibility and allowed him more time with Kaitlin. Third, Bobbie Sue had committed post-separation adultery with two different men. She carried Kaitlin on outings with her boyfriends several times. Fourth, Robert had been physically violent toward Bobbie Sue. Two different incidents were described. In one, Bobbie Sue sustained slight bruising on her arm after Robert grabbed her, and in the other, Robert threatened to punch her but did not.
¶ 12. The chancellor considered the evidence, applied the Albright factors, and found that it was in Kaitlin’s best interest for Robert to have sole physical custody, with joint legal custody and visitation awarded to Bobbie Sue. The appeal is from this judgment.
STANDARD OF REVIEW
¶ 13. This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (¶ 5) (Miss.2002).
ANALYSIS

1. Chancellor Littlejohn’s Recusal

¶ 14. This case was assigned to Chancellor Talmadge Littlejohn. Chancellor Littlejohn heard one day of testimony and then recused himself. The record does not disclose the reasons for his recusal. The case was then reassigned to Chancellor John Hatcher. Chancellor Hatcher heard five days of testimony before he entered the judgment. The parties did not ask for or obtain a transcript of the hearing before Chancellor Littlejohn. Neither party made a transcript available to Chancellor Hatcher.
¶ 15. Bobbie Sue claims that it was reversible error for Chancellor Hatch-er to render judgment without considering the testimony elicited before Chancellor Littlejohn. Bobbie Sue, however, cites no legal authority. The Mississippi Supreme Court has held:
Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment of error. Mississippi Rule of Appellate Procedure [28(a)(6) ] requires that the argument in an appellant’s brief must contain “the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied upon.”
Owen v. Owen, 928 So .2d 156, 168 (¶ 33) (Miss.2006) (internal citations omitted). Accordingly, this issue is waived.
¶ 16. Nevertheless, our review of the record indicates that no substantial evidence was revealed in the hearing before Chancellor Littlejohn that was not also revealed before Chancellor Hatcher. Bobbie Sue certainly had ample opportunity to make a transcript available to Chancellor Hatcher, to recall the witnesses, and to ensure all of her evidence was presented to *720 the deciding judge. She did not. With such opportunity available, she may not now complain. Therefore, we find that this issue has no merit.

2. Property Division

a. The Marital Home

¶ 17. Bobbie Sue argues that the chancellor erred when he awarded her only $4,400 as her equitable interest in the marital home. Chancellors must equitably divide marital property, but they do not have to equally divide it. Shoffner v. Shoffner, 909 So.2d 1245, 1249-50 (¶ 12) (Miss.Ct.App.2005). They are vested with broad discretion, and we will not reverse their property division unless it is manifestly wrong. Id. In addition, the question is not whether one individual marital asset was equitably divided; the question is whether the marital assets, as a whole, were equitably divided. See Wells v. Wells, 800 So.2d 1239, 1243-44 (¶¶ 7-8) (Miss.Ct.App.2001) (affirming property division where wife received all of the marital home’s equity).
¶ 18. Robert received $161,600 of the home’s equity, while Bobbie Sue received only $4,400, which is a mere 2.6% of the equity. The chancellor determined that, although the property was to be considered a marital asset, Robert had owned the house and the adjacent business, free of any liens, for many years prior to the marriage, while the marriage only lasted five years until the separation. Clearly, this was the reason the chancellor awarded Robert the majority of the home’s equity.
¶ 19. We do not look at the division of one asset in isolation. Id. While Bobbie Sue received a small share of the equity in the home, she received a sizeable share of the personal property. Looking at the assets as a whole, Robert received $201,220.50, while Bobbie Sue received $63,020.50, not including her 401(k).
While Bobbie Sue was awarded only 24% of the marital property, this division was within the wide discretion that chancellors have in making these difficult decisions. See Redd v. Redd, 774 So.2d 492, 496 (¶ 15) (Miss.Ct.App.2000) (reversing on other grounds but stating that a 77% to 23% division of the marital property, standing alone, would not have been a ground for reversal).
¶ 20. Under our highly deferential standard of review, we cannot conclude that the chancellor was manifestly wrong when he awarded Bobbie Sue $4,400 as her share of the marital home. This issue is without merit.

b. Robert’s Business

¶ 21. Bobbie Sue next argues that the chancellor erred when he classified Robert’s business, the Motorcycle Doctor, as Robert’s separate property. The effect of the classification was to exclude the business from equitable division and deprive Bobbie Sue of any interest in it.
¶ 22. “A business interest owned prior to marriage is the separate property of the owning spouse, at least to the extent of its value at the time of the marriage.” Deborah H. Bell, Bell on Mississippi Family Law § 8.03[2] (citing Craft v. Craft, 825 So.2d 605, 609 (¶ 14) (Miss.2002)). Appreciation of a separate business interest, which occurs during the marriage and is attributable to the efforts of either spouse, is marital property. Id. at § 8.03[3][b] (citing Craft, 825 So.2d at 609 (¶ 14)). The burden of proof is on the non-owning spouse to show both the appreciation in value of the separate business interest and that such appreciation was attributable to the efforts of either spouse. Waring v. Waring, 747 So.2d 252, 256 (¶ 18) (Miss. 1999).
¶ 23. Robert owned the Motorcycle Doctor for approximately eighteen years *721 prior to the marriage. Clearly, the Motorcycle Doctor was his separate property. Any appreciation in value of the business during the marriage attributable to Robert’s or Bobbie Sue’s efforts could be marital property. However, Bobbie Sue did not offer any evidence of such appreciation. As a result, the chancellor could not have awarded her an equitable interest in Robert’s business.
¶24. The chancellor was correct to classify the Motorcycle Doctor as Robert’s separate property. This issue has no merit.
c. The Truck, Motorcoach, and Four-Wheeler
¶ 25. Robert argues that the chancellor erred when he classified the GMC Sierra pickup truck, the Chevrolet motor-coach, and the Suzuki four-wheeler as marital property. Robert argues that he acquired these items prior to the marriage; therefore, they are his separate property. In addition, Robert argues that the chancellor erred when he used the values Robert assigned the items in his Rule 8.05 financial statement. Robert claims that he made a mistake in that statement when he listed the prices he had paid to acquire the items instead of his estimate of their current values.
¶ 26. As for classification of the items, it appears they should have been classified as Robert’s separate property. Personal property acquired prior to the marriage is the separate property of the owning spouse, unless it has been so extensively used for family purposes that it loses its identity as separate property and becomes marital property. King v. King, 760 So.2d 830, 836 (¶ 19) (Miss.Ct.App. 2000). Bobbie Sue testified that Robert acquired the items before the marriage, and there was no evidence that they had been extensively used by the family. Therefore, it appears the items should have been classified as Robert’s separate property.
¶27. However, we will not reverse the chancellor’s judgment because of this possible error in classification. Where the overall division is fair, an error in classification does not warrant reversal. See Tillman v. Tillman, 716 So.2d 1090, 1095 (¶ 25) (Miss.1998). We note that Robert received 97.4% of the equity in the marital home and 76% of all the marital property. Certainly, from Robert’s perspective, the overall division was fair.
¶ 28. As for valuation of the items, the only evidence either party submitted on the issue was Robert’s Rule 8.05 financial statement. Chancellors may rely on these statements to value property when the parties fail to offer any other evidence as to value. Studdard v. Studdard, 894 So.2d 615, 618-19 (¶ 10) (Miss. Ct.App.2004). “ ‘To the extent that further evidence would have aided the chancellor in [his] decision, the fault lies with the parties and not the chancellor.’ ” Id. (quoting Messer v. Messer, 850 So.2d 161, 170 (¶ 43) (Miss.Ct.App.2003)).
¶ 29. We find no reversible error in the chancellor’s classification and valuation of these items. While the items should have been classified as Robert’s separate property, reversal is not warranted because the overall division was fair. Furthermore, in his valuation of the items, the chancellor relied on the only evidence the parties made available to him. This issue is without merit.

d. The Yukon, Pontoon Boat, Camper, and JfOl(lc)

¶ 30. Robert argues the chancellor erred when he awarded Bobbie Sue all of the equity in the Yukon, the pontoon boat, the camper, and Bobbie Sue’s 401(k). Robert argues the chancellor should have *722 awarded him a one-half equitable interest in these items, just as the chancellor awarded Bobbie Sue a one-half interest in the other personal property.
¶ 31. Again, the question is whether the marital property, as a whole, was equitably divided; assets are not looked at in isolation. Wells, 800 So.2d at 1243-44 (¶¶ 7-8). “[T]his Court is charged with determining whether the entire property division was equitable, not whether each marital asset was equitably divided.” Tillman, 716 So.2d at 1095 (¶ 25).
¶ 32. When the division of all the assets is examined, it is clear that there is no merit to Robert’s contention that he did not receive an equitable share. He received 76% of the marital property, and he received 97.4% of the marital home’s equity-
¶ 33. Furthermore, it is clear that the chancellor awarded Robert a large share of the marital home, and to compensate, he awarded Bobbie Sue a large share of the personal property. To arrive at an equitable distribution of marital property, chancellors may “award a primary asset such as a ... home ... to one party, with the other receiving assets or payments comparable in value.” Bell on Mississippi Family Law § 6.08[l][c]. In Collins v. Collins, 722 So.2d 596, 599-600 (¶¶ 12-15) (Miss. 1998), the chancellor awarded the entire marital home to the husband, and to compensate, he awarded other assets to the wife. The Mississippi Supreme Court affirmed the chancellor’s judgment. Id. This is a permissible way to make an equitable division of the marital property. There was no error, and this issue is without merit.

3. Custody of Kaitlin

¶ 34. Bobbie Sue argues the chancellor erred when he awarded sole physical custody of Kaitlin to Robert. “It is appropriate to consider here that our limited scope of review directs that ‘[w]e will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interest[ ] of the child.’ ” Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
¶ 35. “[T]he polestar consideration in child custody cases is the best interest and welfare of the child. According to Albright, the chancellor must consider certain factors in determining the child’s best interest.” Wells v. Wells, 35 So.3d 1250, 1254 (¶ 11) (Miss.Ct.App.2010) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).
¶ 36. We will address Bobbie Sue’s arguments with respect to each Albright factor.

a. Age, Health, and Sex of the Child

¶ 37. The chancellor found this factor favored neither party. Kaitlin was a healthy, five-year-old girl at the time of the divorce. Bobbie Sue argues that Kaitlin was of “tender years” and that this factor should have favored her.
¶ 38. The Mississippi Supreme Court articulated the current state of the tender-years doctrine in Copeland v. Copeland, 904 So.2d 1066, 1075 (¶34) (Miss. 2004), stating:
In Buntyn v. Smallwood, 412 So.2d 236, 238 (Miss.1982), this Court noted that if the mother of a child of tender years is fit, then she should be awarded custody. “[A] child is no longer of tender years when that child can be equally cared for by persons other than the mother.” Mercier v. Mercier, 717 So.2d 304, 307 (Miss.1998). However, this doctrine has been weakened in recent years and now *723 is only a presumption to be considered along with the other Albright factors.,
In Copeland, the supreme court upheld the chancellor’s custody award of a two-year-old boy to his father. Id. at 1070 (¶ 8), 1077 (¶46). In another case, the court held that a seven-year-old child is “long past” his or her tender years. Torrence v. Moore, 455 So.2d 778, 780 (Miss.1984) (citing Duncan v. Duncan, 119 Miss. 271, 80 So. 697 (1919)). In addition, the court has suggested that a four-year-old child is no longer of tender years. Lee v. Lee, 798 So.2d 1284, 1289 (¶ 18) (Miss.2001).
¶ 89. The chancellor was not manifestly wrong when he decided that Kaitlin, a five-year-old girl, was not of tender years. Therefore, we find no error in the chancellor’s determination of this factor.

b. Continuing Care of the Child Prior to Separation

¶ 40. The chancellor decided that this factor favored Robert. The bulk of the testimony at trial indicated that Robert was the more attentive parent. He took Kaitlin to daycare everyday and picked her up, and he cooked most of the meals. Kaitlin was generally described as a “daddy’s girl.”
¶ 41. Bobbie Sue argues, essentially, that the chancellor misunderstood the evidence and that this factor should have either favored her or favored neither party. Nevertheless, there was substantial evidence to support the chancellor’s finding. This Court has stated:
Our job is not to reweigh the evidence to see if ... we might decide the case differently. Rather, if we determine that there is substantial evidence in the record to support the findings of the chancellor, we ought properly to affirm.
Carter v. Carter, 785 So.2d 1109, 1114 (¶ 18) (Miss.Ct.App.1999). There was substantial evidence in the record to support the chancellor’s finding.
c. Parenting Skills
¶ 42. The chancellor found this factor favored neither parent. He stated that both parents had “equally good parenting skills” and that both had done “things that were harmful or potentially harmful to their child in their substance abuse problems, which have been rehabilitated.”
¶43. Bobbie Sue argues this factor should have favored her. She points to testimony that Robert would, on occasion, drive a car, with Kaitlin in it, after having had a few beers. She also points to evidence of physical abuse. On one occasion Robert grabbed her arm, and on another occasion, he raised his fist and threatened to punch her but did not actually punch her.
¶ 44. As for the physical abuse, the evidence was not sufficient to convince the chancellor to invoke the presumption against granting custody to a parent with a history of family violence. The chancellor did not think these incidents deserved the weight Bobbie Sue claimed they deserved. As for drinking and driving, there was also testimony that Bobbie Sue smoked marijuana at the house in a location where Kaitlin could have seen her. The chancellor believed both parties when they said they had ceased drinking and using drugs since the separation, and he did not assign much weight to this evidence.
¶ 45. Again, Bobbie Sue essentially asks this Court to substitute its own evaluation of the evidence for the chancellor’s. Our review is more limited than that. While we might have decided the issue differently than the chancellor, the question before us is whether the chancellor’s findings were supported by substantial evidence. Here, they were.

*724
d. Willingness and Capacity to Provide Primary Child Care and Employment Responsibilities

¶ 46. The chancellor found this factor favored Robert. The chancellor cited the fact that Bobbie Sue had to work five days a week and a few Saturdays a year from 8:30 a.m. to 5:00 p.m. at Mac’s Tires, while Robert’s self-employment allowed him greater flexibility and more time with Kaitlin.
¶ 47. The chancellor’s reasoning on this factor is supported by several cases. In Woodham v. Woodham, 17 So.3d 153, 157 (¶ 12) (Miss.Ct.App.2009), this factor favored the mother because the father worked twelve-hour days and was sometimes on-call, while the mother worked fewer hours and had more time to spend with the child. In Ivy v. Ivy, 863 So.2d 1010, 1014 (¶ 11) (Miss. Ct.App.2004), this factor favored the mother because the “father worked extended hours that would prevent him from devoting time to the children.” See also Brock v. Brock, 906 So.2d 879, 884 (¶¶ 28-29) (Miss.Ct.App. 2005).
¶48. The chancellor also cited Bobbie Sue’s adultery as evidence that Robert had greater willingness and capacity to provide primary childcare. The chancellor stated that Bobbie Sue’s adultery “could be devastatingly harmful to [Kaitlin].” Bobbie Sue contests that finding. The relevancy of Bobbie Sue’s adultery will be considered under the moral-fitness factor below.

e. Physical and Mental Health and Age of Parents

¶ 49. The chancellor found this factor favored Robert. At the time of the divorce, Bobbie Sue was taking prescription medications for anxiety and depression. The chancellor stated: “[T]he physical and mental health of Bobbie Sue ... are questionable because of her continued use of prescription drugs ... and her engaging in dangerous extramarital relationships.”
¶ 50. Bobbie Sue argues that her use of anti-depressant and anti-anxiety medications should not have counted against her because there was no evidence that they impaired her ability to care for Kaitlin. Bobbie Sue also reiterates her objection on the adultery issue, which, as stated, will be discussed under the moral-fitness factor below.
¶ 51. The issue here is whether a parent’s use of prescription medications for depression and anxiety should count against that parent in a custody proceeding when there is no evidence that the medications impair the parent’s ability to care for the child. In Beasley v. Scott, 900 So.2d 1217, 1221 (¶ 11) (Miss.Ct.App.2005), the chancellor refused to count the mother’s use of anti-depressants to combat post-partum depression against her, and this Court found no error. In Passmore v. Passmore, 820 So.2d 747, 751 (¶¶ 12-13) (Miss.Ct.App.2002), the chancellor awarded custody to a mother who was taking medications for depression and migraine headaches, and this Court found no error. Professor Bell states: “[T]he fact that a parent has experienced mental or emotional problems is not a bar to custody without a showing that the parent’s present ability to care for the child is affected.” Bell on Mississippi Family Law § 5.03[6][b]. On the other hand, in Woodham, the chancellor awarded custody -to the father, in part, because the mother had mixed anti-depressants with alcohol, which reflected “poor judgment,” and this Court found no error. Woodham, 17 So.3d at 158 (¶¶ 18-19).
¶ 52. Here, there was no evidence that Bobbie Sue exercised poor judgment in her use of the medications. Rather, it appears that she was taking the medications as prescribed, and there was nothing to suggest that they impaired her *725 ability to care for Kaitlin. Under these circumstances, we find the chancellor might have erred in his consideration of this factor.

f.Emotional Ties of the Parent and Child

¶ 53. The chancellor found this factor favored neither parent. Bobbie Sue does not contest that finding on appeal.

g.Moral Fitness

¶ 54. The chancellor found this factor favored Robert. Bobbie Sue had affairs with two different men following her separation from Robert. She carried Kaitlin on outings with her boyfriends numerous times. However, there was no evidence that Kaitlin was aware that these men were boyfriends or that she was exposed to anything indecent.
¶ 55. Bobbie Sue argues the chancellor erred when he counted these affairs against her, since there was no showing of adverse impact on Kaitlin. We agree that a post-separation affair should not receive undue weight in a custody decision. Adultery is just one aspect of the moral-fitness factor, which is just one factor in a multi-factor test aimed at answering one question-what is in the child’s best interest? “Adultery of a parent may be an unwholesome influence and an impairment to the child’s best interest, but on the other hand, may have no effect. The trial court should consider this factor along with all others when making original custody determinations.” Carr v. Carr, 480 So.2d 1120, 1123 (Miss.1985).
¶ 56. The chancellor considered Bobbie Sue’s adulterous relationships as just one factor among others. If this had been his sole basis for granting Robert custody, we might have considered this to be error. See Brekeen v. Brekeen, 880 So.2d 280, 286-87 (¶¶ 19-21) (Miss.2004) (reversing chancellor’s custody award to father where chancellor placed too much weight on mother’s adultery). Because it was not the sole basis, we cannot find it to be reversible error. See Bradley v. Jones, 949 So.2d 802, 805 (¶ 11) (Miss.Ct.App.2006).

h.Home, School, and Community Record of the Child

¶ 57. The chancellor found this factor favored neither party. Bobbie Sue does not contest that finding on appeal. i Preference of a Child Twelve or Older
¶ 58. Kaitlin was only five years old at the time of the divorce. This factor does not apply.

j. Stability of the Home Environment

¶ 59. The chancellor found this factor favored Robert. After the separation, Robert remained in the marital home, which was very close to Kaitlin’s school, while Bobbie Sue moved in with her mother, who smoked cigarettes inside the house.
¶ 60. Bobbie Sue takes issue with a peculiar aspect of the chancellor’s findings under this factor. The chancellor found that, prior to the separation, Bobbie Sue had contributed to instability in the marital home by engaging in constructive desertion and habitual cruel and inhuman treatment in not fulfilling her “marital duties.” There was testimony that Bobbie Sue and Robert had not been intimate for eight months prior to the separation. Also, during their last night together in the marital home, he attempted to be intimate with her, but she declined the offer.
¶ 61. Whether Bobbie Sue was an eager sexual partner or not would seem to have no relation to the stability of the home environment or the best interest of Kaitlin. Furthermore, it is well established that “marital fault should not be used as a sanction in custody awards.” Brekeen, 880 So.2d at 287 (¶ 20). We find the chancellor’s reasoning here to be erroneous. *726 However, there was substantial evidence to support the finding that Robert’s home environment was more stable.

k Stability of the Work Environment

¶ 62. The chancellor found this factor favored Bobbie Sue. She had a stable, salaried position at Mac’s Tires.

1. Other Relevant Factors

¶ 63. Bobbie Sue argues the chancellor erred when he separated Kaitlin from her half-brother, Drew. Drew was Bobbie Sue’s eleven-year-old son from a previous relationship. He had lived with Kaitlin her entire life. The testimony was that they had a typical brother-sister relationship. It was usually loving, but there was the occasional argument. Since Drew was going to stay with his mother, the effect of granting Robert custody of Kaitlin was to split the children apart.
¶ 64. There is no rule that requires chancellors to keep siblings together. There is a preference for keeping siblings together, but the paramount concern is the best interest of the child. Wells, 35 So.3d at 1257 (¶ 28) (affirming the chancellor’s custody award to father even though it would separate siblings). The chancellor applied the Albright factors, in light of the preference to keep siblings together, and he arrived at the conclusion that it was in Kaitlin’s best interest for Robert to receive custody.
¶ 65. Our review of the record indicates that there was substantial evidence to support the chancellor’s determination of the Albright factors. Indeed, we might have interpreted the factors differently than the chancellor. However, our role is to determine whether there was an evidentiary basis to support the chancellor’s findings. Having done so, we cannot find the chancellor erred in his Albright analysis.
¶ 66. Finding no reversible error, we affirm the judgment of the chancery court.
¶ 67. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.
MYERS, J., NOT PARTICIPATING.