FAIR, J.,
for the Court:
¶ 1. Iretha and Perry Collins agreed to an irreconcilable differences (ID) divorce and custody and visitation arrangements for their teenaged daughter. They sub *462 mitted four issues to the chancellor: (1) division of marital assets and debts, (2) alimony, (3) child support, and (4) attorneys fees.
¶ 2. Perry and Iretha presented twenty-eight documents and both testified. From a judgment on the submitted issues entered on October 18, 2010, Perry now appeals. Finding error, but error that is harmless, we affirm the chancellor’s judgment.
FACTS
¶ 3. Perry is fifty-two years old and Ire-tha is forty-three. They married in June 1991 in Washington County. Each had been married previously. Iretha brought a son, now an adult, into the marriage. Perry brought a house he built on Abide Cove in 1988 and another home in Lake Providence, Louisiana. Their only child, Jermylia, was born on April 14,1993.
¶4. In 2005 they separated, filed for divorce, and then reconciled. They separated again, this time permanently, in March 2006, having established three businesses during the fifteen years they spent together: (1) Collins Realty, which manages eight rentals; (2) Collins Heating and Air, Inc., which Perry runs; and (3) Collins Enterprise, which is operated by Ire-tha and runs Abundance of Life child care centers. The proceeds from their first marital home were rolled into the present marital home, and the proceeds of the Louisiana house, about $30,000, went into a joint account and was spent during the marriage. For extra income they “flipped houses — bought homes, fixed them, and sold them for profit” in addition to their salaried employment, rental real estate, and the two service businesses. Iretha performed most of the child care and home-making duties. In addition to their daughter and her son, Perry’s niece lived in their home for about four years.
¶ 5. Iretha has a business degree from Delta State University. Perry has a high school diploma and an associate’s degree in heating and air conditioning.
¶ 6. Before their marriage, Iretha was an assistant teacher in the Greenville school system and held a part-time job in the mall. In 1992, she began a three-year stint as secretary to the city clerk, followed by a year as a homemaker. Then, in 1997 she opened a daycare center and operated it from a house she and Perry bought together. In 2009, after they separated, she opened a second daycare center.
¶7. Perry worked for Tennessee Gas Pipeline for nineteen years. He was laid off in 1995. In 1998, he opened Collins Heating and Air Conditioning. Since 1999 he and Iretha have been the daily managers of their two businesses, sharing in real estate ventures and assisting in the business of the other when needed. Because of her education and experience, Iretha handled the paperwork for both businesses.
¶ 8. The home Perry built prior to their marriage was sold, and the proceeds were used as a down payment on the $350,000 purchase price of a new home.
¶ 9. After the couple separated in 2006, Perry remained in the marital home, and Iretha and Jermylia moved into an apartment.
¶ 10. Iretha filed for divorce, and four years of litigation ensued. Perry changed attorneys four times. Discovery commenced and recommenced. Settlement discussions took place. One settlement discussion resulted in an oral agreement regarding valuation of the two business properties. Perry later withdrew his agreement.
¶ 11. Ultimately, a trial took place, and a final judgment followed on October 18, 2010. Perry now appeals claiming:
*463 1. The chancellor erred in her calculation of Perry’s income to determine child support.
2. The chancellor erred in the manner in which she distributed marital assets.
STANDARD OF REVIEW
¶ 12. Questions of law are reviewed de novo. Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011). A chancellor’s factual findings, on the other hand, will not be disturbed unless she was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that she resolved all such fact issues in favor of the appellee. Ferrara v. Walters, 919 So.2d 876, 881 (¶ 8) (Miss.2005) (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990)).
DISCUSSION
1. Chancery Court Judgment
¶ 13. The chancellor’s opinion consists of eighteen pages of thorough, detailed findings of fact and conclusions of law. With some elaboration, the above facts were set out. The opinion recited agreed and stipulated provisions for divorce on ID grounds; custody of Jermylia to Iretha; visitation by Perry (noting that for the prior three years Perry had not visited with her); and shared and equal responsibility for Jermylia’s health insurance and medical care. The chancellor found these provisions were “fair and reasonable and in the best interest of the minor child.”
¶ 14. The chancellor, citing Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994), determined that all property owned by the parties was marital because it was “acquired, accumulated, or used for the benefit of the entire family during the marriage.” She further found that “the contributions and efforts of the spouses are considered to be of equal value.” Both determinations complied with requirements established in Hemsley.
¶ 15. The chancellor then turned to the nature and valuation of marital property, again referring to Hemsley and specifying the major items: (1) the marital tangible personalty having a value of $54,519.93; (2) the marital realty valued at $463,363; and (3) the marital intangible personalty valued at $24,518.92.
¶ 16. The court recited that during the four years of their separation, the parties had “satisfactorily divided their personal property.” The chancellor set out in the judgment the items in each party’s possession and valuations thereof. The chancellor noted that two horses, worth $250 each, as well as ten goats, ten sheep, and two donkeys (all unvalued) were acquired by Perry after the separation.
¶ 17. After setting out the marital property, the chancellor discussed and made specific findings under each of the eight factors required to be considered in determining the equitable division of marital property. See Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). Thereafter, she adopted the “satisfactory division” presented by the parties themselves, allocating property worth $19,019.93 to Iretha and property worth $36,000 to Perry. The judgment included verbiage referring to the parties’ 2006 van as “in Iretha’s hands,” rather than Perry’s, which we attribute to a harmless scrivener’s error.
*464 1118. Iretha was then awarded the daycare property worth $75,000 and duplexes worth $114,900 for a total of $189,900. Perry received the marital home and the heating and air conditioning property worth respectively $198,463 and $75,000, for a total of $273,463.
¶ 19. The chancellor found equal contribution toward acquisition of the marital property and a resulting right to an approximately equal division of that property. To equal their shares in the real estate, a lump sum payment of $41,781.50 was awarded from Perry to Iretha. Finding the two business properties to have equal value, the chancellor adjudicated:
[T]he wife is entitled to $99,231.50, which is one-half of the equity in the marital home, and the husband is entitled to $57,450.00, which is one-half of the equity in the duplex property. Thus, subtracting $57,450 from the $99,231.50 which is due to the wife, the husband should pay to the wife $41,781.50 as her share of the equity in the marital home and the court awards her the same.
¶20. The chancellor applied the same approach to division of the intangible personalty of the marriage. She found that Iretha owed Perry half of her $9,000 annuity (which had been disposed of by Iretha but is still subject to consideration as a marital asset under Ferguson). The chancellor also required Perry to pay Ire-tha half of his annuity worth $18,741. This resulted in Perry owing Iretha $4,870.
¶ 21. In the same manner, the life insurance cash value and the checking account balance were equally divided.
¶ 22. After detailing the reasoning behind her classification and disposition of each asset, the chancellor set out a tabular summary of her holdings. It reflects ultimate net marital property of $213,110.89 for Iretha and $223,127.96 for Perry.
¶ 23. Turning to alimony, the chancellor found that no deficit had been established after the equitable division of the marital property and that the parties were able to support themselves. She found that an award of alimony was not justified.
¶ 24. Child support was then addressed. The chancellor observed that Perry “pays himself about $1,059.52” every two weeks and Iretha “pays herself approximately $18,900.00 per year.” The chancellor recognized that both received passive and business income in addition to their paychecks. The trial court found it difficult to establish Perry’s income, since he testified that his Uniform Chancery Court Rule 8.05 form was incorrect. Although Perry testified to a $30,000 annual income, bank records showed gross deposits into his business account of $188,919.51 in 2009, and further testimony showed rental income of $35,719.51. Perry introduced no evidence of expenses for either business, though he disputed the figures submitted by Iretha. While Iretha introduced tax returns reflecting her income and that of her business, as required by Rule 8.05, Perry produced none. The chancellor found his testimony of $300,000 per year in annual expenses “simply not credible.” She determined Perry’s annual net income to be half of the air conditioning deposits, $94,459.75, and $15,756.72 in net rents, for a total of $110,216.47.
¶ 25. The statutory guideline of 14% of adjusted gross income for one child was applied, establishing $1,285.84 per month as child support. See Miss.Code Ann. § 43-19-101 (Rev,2009). After discussion of the statutory factors allowing for deviation from statutory guidelines, the trial court set child support at $1,300 per month. See Miss.Code Ann. § 43-19-103 (Rev.2009). Facts noted in the opinion as favoring the award were: (1) Jermylia is *465 seventeen and preparing to go to college; (2) she has attended a private school since the fourth grade; (3) she has lived an affluent lifestyle in a $350,000 house since she was six and now lives in an apartment; (4) her father has not visited with her nor contributed to her educational expenses since she was fourteen; and (5) Perry’s personal assets are substantially greater than Iretha’s. Perry was also ordered to pay half of Jermylia’s necessary and reasonable college expenses.
¶ 26. Finding both parties able to pay their own fees and noting that no evidence regarding fees was submitted in accord with McKee v. McKee, 418 So.2d 764 (Miss.1982), attorneys’ fees and expenses were denied to both parties.
2. Calculation of Perry’s Income
¶ 27. Perry argues that the chancellor’s calculation of his adjusted gross income “is deeply flawed and manifestly wrong.”

a. Air Conditioning Business Income

¶ 28. Perry admits testifying that his Rule 8.05 financial statement was “incorrect” but argues he was referring to some of his expenses, not his income. He testified consistently to receiving $30,000 in annual gross income from his air conditioning business. The bank statements used by the chancellor to calculate Perry’s income show checks payable to Perry directly from the business in the total annual amount of $20,939.35 (net after state and federal taxes). Perry argues that he should, therefore, pay $244.29 monthly toward his daughter’s support. He chides the chancellor for simply dividing the gross business deposits in half and attributing half to expenses and the other half to income, stating the court “simply guessed” at expenses. He asserts the court should have considered all the checks out of the account as expenses, which would have reflected a net business income of $4,010 “a giant step from $94,459.75.” But we must note that after four years, four attorneys, and numerous discovery filings, Perry came to trial with an admittedly incorrect Rule 8.05 disclosure form and none of the documents required to accompany it. Not only did he fail to attach any current income tax returns to his Rule 8.05 form, Perry admitted he had not filed returns for at least two years immediately preceding trial. We find the determination of income by the chancellor is supported by adequate evidence of record and was within the discretionary power of the chancellor.

b. Rental Income

¶ 29. Perry notes that Iretha was awarded the rental property from the marriage, and he asserts that rental income should not have been used to set child support. Both he and Iretha testified to a gross rental income of approximately $36,000. Iretha reported her annual net income from the units as $15,756.72. Perry disputes this amount but provided no documentation to support his claim.
¶ 30. Perry argues the chancellor erred when she calculated his monthly income as the total net income he receives from his air conditioning business and the rental units, or $9,184.70 per month. The chancellor had applied the statutory percentage of 14% to that figure in establishing $1,285.85 per month in child support. Perry submits that since the trial court awarded the rental units to Iretha, she will be receiving $15,756.72 annually, and it should not have been considered his income in setting child support going forward. We agree, though as discussed below, the error was harmless. Removing rental income from Perry’s income calculation would reduce his statutory support by $183.83 to $1102.02 per month.
*466 c. Establishment of Final Support Amount
¶ 31. The chancellor applied statutory guidelines to all of Perry’s income and also rounded the result up to $1,300 per month. The 14% guideline is mandatory for income up to $50,000. If the guideline percentage is applied to income over $50,000, as in this case, the chancellor is required by Mississippi Code Annotated § 43-19-101(4) to make written findings regarding the reasonableness of the percentage’s application to income over the threshold, which the chancellor did. See Miss.Code Ann. § 43-19-103 (Rev.2009). The chancellor increased the monthly amount to $1,300 based on criteria set out in section 43-19-103. Though the chancellor erred in including rentals in Perry’s income, the error is harmless. The chancellor had found that a deviation of $14.14 per month was warranted. An similar deviation of $198.98 to reach the awarded $1300 is, likewise, allowed by the evidence and in accord with controlling statutes and case law.
3. Property Division
f 32. Perry’s chief complaint over the division of marital property is the chancellor’s valuation of the two business properties: the building used by Perry for his air conditioning business, and the building used by Iretha for child care. At the beginning of the trial, counsel for Ire-tha announced that there were no appraisals of the two business buildings because the parties had decided to treat them as equal in value, attributing a $75,000 value to each. That agreement was never reduced to writing and has been disavowed by Perry. He testified under cross-examination that the value of his business property was $35,000.
¶ 33. Iretha listed both properties on her Rule 8.05 disclosure, attributing a $75,000 value to each. Perry’s Exhibit 10 reflects the tax assessor’s valuation of the child-care facility to be $51,120, and Perry’s Exhibit 17 shows the air-conditioning realty is worth $37,790. These were the only independent valuations submitted by either party. The difference between them is $13,330, which could be divided in the same manner the chancellor divided all other similar assets with uneven valuations. Iretha’s ultimate distribution would still be slightly smaller in valuation than Perry’s.

Rule 8.05 Disclosure Forms

¶ 34. This case highlights the role of the income and asset disclosures required by Rule 8.05 of the Uniform Chancery Court Rules. Rule 8.05 mandates prescribed forms for such disclosure and also requires:
(B) Copies of the preceding year’s Federal and State Income Tax returns, in full form as filed, or copies of W-2s if the return has not yet been filed.
(C) A general statement of the providing party describing employment history and earnings from the inception of the marriage or from the date of divorce, whichever is applicable.
¶ 35. Compliance with the rule is mandatory, for obvious reasons. If both parties put down identical values for marital property and properly disclose their income and expenses, supported by the required federal and state tax returns and earnings history, a court can adjudicate property and money issues expeditiously and in accord with the law. Noting the importance of Rule 8.05 disclosures, in Trim v. Trim, 33 So.3d 471 (Miss.2010), the supreme court has ruled that filing a substantially false Rule 8.05 financial disclosure statement constitutes fraud on the court.
*467 ¶ 36. Though there may be contrary misinterpretation of some decisions, which properly apply only when conflicts between forms conflict,[1] Rule 8.05 disclosures should not be evidence of last resort. Rather, they should be the gold standard, requiring other evidence only when there are legitimate disputes as to valuation.
CONCLUSION
¶ 37. In dealing with the marital property in this case, the chancellor was not guilty of an abuse of discretion. She recited controlling precedent and followed it in her opinion. She properly relied on Rule 8.05 disclosure forms and other documentary evidence. She heard the witnesses and evaluated their credibility. She made factual findings that were supported by evidence of record and which were set out in her written opinion. “Reversal is not warranted because the overall division was fair.” Kimbrough v. Kimbrough, 76 So.3d 715, 721 (¶ 29) (Miss.Ct.App.2011).
¶ 38. THE JUDGMENT OF THE WASHINGTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. "Chancellors may rely on these statements to value property when the parties fail to offer any other evidence as to value.” Kimbrough v. Kimbrough, 76 So.3d 715, 721 (1128) (Miss.App.2011) (quoting Studdard v. Studdard, 894 So.2d 615, 618-19 (Miss.Ct.App.2004)). "To the extent that further evidence would have aided the chancellor in [his] decision, the fault lies with the parties and not the chancellor.” Messer v. Messer, 850 So.2d 161, 170 (¶ 43) (Miss.Ct.App.2003).