MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. The Chancery Court of Newton County granted Richard Woodham a divorce from Amanda Woodham on the grounds of adultery and further awarded him custody of the couple’s minor child. Amanda, aggrieved by the chancellor’s decision regarding custody, now appeals. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. Amanda and Richard were married on September 21, 1996. One child, Rachael, was born of the marriage on June 12, 2003. In October 2005, Amanda began an adulterous affair that would continue through the trial. In March 2006, she moved out of the marital home into an apartment. On May 17, 2006, Richard confronted Amanda and her paramour, John Ashley Thrash, at her apartment.
 

 ¶ 3. Shortly thereafter, Richard filed a complaint for divorce alleging adultery and seeking custody of the couple’s child. Amanda counterclaimed for divorce on the ground of habitual cruel and inhuman conduct and also sought custody. Following the separation, a temporary order provided that the parties would share joint legal and physical custody, with actual physical custody alternating week-to-week.
 

 ¶ 4. Trial commenced with a special chancellor on May 17, 2007. The trial could not be completed in the first setting and was ultimately concluded on June 18, 2007. The primary issue at trial was the custody of Rachael, as Amanda dropped her counterclaim for divorce and conceded that her adultery provided the ground for divorce. Property matters were resolved by agreement of the parties.
 

 ¶ 5. The trial court issued a memorandum opinion on August 8, 2007, and entered judgment on October 15, 2007. It granted Richard divorce on the grounds of adultery and gave him full physical and legal custody of Rachael. Amanda was ordered to pay $240.40 per month in child
 
 *156
 
 support. Aggrieved by this judgment, Amanda now appeals, asserting that the trial court’s award of sole physical and legal custody to Richard (1) resulted from an erroneous analysis of the
 
 Albright
 
 factors amounting to a “penalty” for Amanda’s adultery and (2) was not in the child’s best interest.
 

 STANDARD OF REVIEW
 

 ¶ 6. In a child custody case, an appellate court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Chapel v. Chapel,
 
 876 So.2d 290, 292-93(¶ 8) (Miss.2004) (citing
 
 Townsend v. Townsend,
 
 859 So.2d 370, 371-72(¶ 7) (Miss.2003)). Where the chancellor improperly considers and applies the
 
 Albright
 
 factors, we are obliged to find the chancellor in error.
 
 Hollon v. Hollon,
 
 784 So.2d 943, 946(¶ 11) (Miss.2001) (citing
 
 Jerome v. Stroud,
 
 689 So.2d 755, 757 (Miss.1997)). Nonetheless, “our limited scope of review directs that we will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.”
 
 Copeland v. Copeland,
 
 904 So.2d 1066, 1074(¶ 30) (Miss.2004) (citations and internal quotations omitted). Therefore, “[u]nless the evidence demands a finding contrary to the chancellor’s decision, [an appellate court] will not disturb a custody ruling.”
 
 Id.
 
 (citing
 
 Phillips v. Phillips,
 
 555 So.2d 698, 700 (Miss.1989)).
 

 DISCUSSION
 

 1. Whether the chancellor erred in awarding custody to Richard.
 

 ¶ 7. In child custody cases, the polestar consideration is the best interest and welfare of the child.
 
 See, e.g., Brekeen v. Brekeen,
 
 880 So.2d 280, 283(¶ 5) (Miss.2004). The familiar
 
 Albright
 
 factors are used by our courts to determine the child’s best interest as to custody.
 
 See Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983).
 

 ¶ 8. On appeal, Amanda challenges the chancellor’s findings on many of the
 
 Al-bright
 
 factors. As our standard of review requires us to consider not only the chancellor’s findings on each individual factor but also the chancellor’s ultimate conclusion as to the child’s best interest, we shall discuss each factor.
 

 1. Age, Health, and Sex of the Child
 

 ¶ 9. Amanda argues that the chancellor erred in finding that this factor favored neither parent. She asserts that it is in Rachael’s best interest to be placed with her mother, because Rachael is a young, female child. The supreme court has stated:
 

 In the past, this Court espoused what has come to be know [sic] as the tender years doctrine, which essentially states that if the mother of a child of tender years (i.e. early in development) is fit, then she should have custody. However, as previously stated, the age and sex of a child are merely factors to be considered under
 
 Albright,
 
 and this Court has significantly weakened the once strong presumption that a mother is generally best suited to raise a young child. In
 
 Mercier v. Mercier,
 
 717 So.2d 304, 307 [ (¶ 14) ] (Miss.1998), we held that the tender years doctrine has been gradually weakened in Mississippi jurisprudence to the point of now being only a presumption.
 

 Lee v. Lee,
 
 798 So.2d 1284, 1289(¶ 17) (Miss.2001) (internal citation omitted). The supreme court has also held that a
 
 *157
 
 child of four “may not be subject to the tender years idea any longer.”
 
 Id.
 
 at (¶ 18). A child is no longer of tender years when she can be equally cared for by persons other than the mother.
 
 Mercier,
 
 717 So.2d at 307(¶ 15).
 

 ¶ 10. The record reflects that Rachael was four years old at the time of the trial. Amanda returned to work six to eight weeks after Rachael was born, and Amanda testified that she began bottle-feeding the child around this time. There was also ample testimony from which the chancellor could find that both parents could and did take care of the child’s basic needs. Although Rachael is a female child, the record reflects that Richard’s mother and grandmother are very active in her life. Therefore, we cannot say that the chancellor was without sufficient evidence to find that this factor favored neither party.
 

 £
 
 Continuity of Care
 

 ¶ 11. The chancellor found that this factor favored neither parent. At trial, Amanda claimed to be the primary caregiver; Richard testified that he played an equal role in providing for the needs of the child. The chancellor found that Richard’s grandmother, Ruth Woodham (Ruth), had provided a majority of the childcare services prior to trial, usually spending most of every workday with Rachael. The chancellor noted that prior to separation, Richard would take Rachael to Ruth in the mornings, and Amanda would usually pick her up in the evenings. When the child was home, both parents provided for her needs. “Because the testimony indicates that both [parents] cared for the child[ ] while receiving assistance from family members, we can find no error in the chancellor’s ruling that this factor did not favor either party.”
 
 Mayfield v. Mayfield,
 
 956 So.2d 337, 343(¶14) (Miss.Ct.App.2007). Sufficient evidence supports the chancellor’s finding that this factor favored neither parent.
 

 3. Employment of the Parents and Responsibilities of the Employment
 

 ¶ 12. The chancellor found that this factor favored Amanda because Richard presently works from 6:30 a.m. to 6:30 p.m., often five days a week. Prior to this, Richard worked on call and his working hours fluctuated greatly. He also testified that it was possible he may return to working on call in the future. Amanda, on the other hand, works fewer hours and would be able to take the child to and from school herself. The chancellor’s finding is supported by substantial evidence.
 

 A
 
 Emotional Ties of Parent and Child
 

 ¶ 13. The chancellor found that Rachael was close to both her parents, and neither party disputes this on appeal.
 

 5. Moral Fitness of the Parents
 

 ¶ 14. The chancellor found that this factor favored Richard because of Amanda’s adultery. Amanda testified that she tried to avoid exposing Rachael to her affair, but she admitted that Rachael was present on some occasions when she was with Thrash. She also acknowledged that on one occasion the child came into her bedroom and climbed into the bed while she shared it with Thrash. The chancellor’s finding that this factor favors Richard is supported by substantial evidence in the record.
 

 6. The Home, School, and Community Record of the Child
 

 ¶ 15. The chancellor found that this factor favored Richard, because Richard remained in the marital home and because Ruth, Richard’s grandmother, would continue to spend seven or eight hours a day with the child, five days a
 
 *158
 
 week or more. There was testimony that Ruth taught the child how to count, how to write her name, and how to recite the alphabet. The chancellor found Rachael to have benefitted immensely from a “structured regiment [sic] of daily activities” established by Ruth, and she attributed the child’s above-average achievements in large part to Ruth’s tutelage. Furthermore, following the separation, Amanda’s relationship with Richard’s family, including Ruth, had degraded. Amanda attempted to place Rachael into daycare when she was at work and disregarded a temporary order that Ruth continue to provide the childcare for Rachael on workdays. There was also testimony that Rachael had regularly attended church with Richard or Ruth on Wednesdays and Sundays, but Amanda had not, and that this was a source of contention during the marriage. Richard would keep Rachael in familiar surroundings, because he continued to live in the marital home. Considering all the evidence, the chancellor did not abuse her discretion in finding that this factor favored Richard.
 

 7.
 
 Preference of the Child
 

 ¶ 16. Neither party disputes the chancellor’s finding that this factor does not apply.
 

 8. Stability of Home Environment and Employment of Each Parent
 

 ¶ 17. The chancellor found that Amanda had continuously held the same job over the last eight years and worked regular hours. On the other hand, Richard, while never idle, had worked at six jobs and had a potentially irregular work schedule. The chancellor found that stability of employment favored Amanda. However, the chancellor found that the stability of the home environment favored Richard, because he remained in the marital home and accepted the support offered by his family. The chancellor’s findings on this issue are supported by substantial evidence.
 

 9. Physical and Mental Health of the Parents
 

 ¶ 18. The chancellor found that this factor favored Richard. The chancellor noted that both parents were in their early thirties. Richard is in generally good health, but Amanda underwent thyroid surgery in 2004. Shortly after the surgery, she began taking the anti-depressant Lexapro.
 
 [1]
 

 ¶ 19. The chancellor found that this factor favored Richard because Amanda manifested poor judgment in combining alcohol with the anti-depressants. The chancellor noted that there was no evidence that this caused Amanda harm, but she nonetheless found it to reflect poor judgment. Additionally, there was testimony that Rachael had a generally low energy level and often appeared unusually tired in the afternoons. Considering all the evidence, we cannot say the chancellor abused her discretion in finding that this factor favored Richard.
 

 10. Parenting Skills; Willingness and Capacity to Provide Primary Childcare
 

 ¶ 20. The chancellor found that this factor favored Richard because he showed greater willingness and capacity to provide primary childcare. On appeal, Amanda argues that this finding amounted to a “punishment” for her adultery. She cites the chancellor’s memorandum opinion
 
 *159
 
 which noted that, other than his employment, Richard appeared to have no interests he placed above the child. The chancellor contrasted this with Amanda, who on occasion would either carry on her extramarital affair in Rachael’s presence, or leave the child with family so she could spend the night alone with Thrash. In particular, Amanda takes issue with the chancellor’s condemnatory language, stating in her memorandum opinion that Amanda “sacrificed both the relationship with her child and her marriage to be with John Ashley Thrash.”
 

 ¶ 21. Our supreme court has warned on many occasions that adultery is not to be used as a sanction against a guilty parent in awarding custody of children.
 
 See, e.g., Bower v. Bower,
 
 758 So.2d 405, 412(¶ 29) (Miss.2000) (citing
 
 Carr v. Carr,
 
 480 So.2d 1120, 1121 (Miss.1985)). The polestar consideration in vesting custody in one parent over the other must be the best interest and the welfare of the child.
 
 Id.
 
 Nonetheless, this does not preclude a chancellor from considering conduct associated with the adultery when it is relevant to one of the
 
 Albright
 
 factors. Our supreme court has-on several occasions permitted a chancellor to consider a parent’s choice to spend time with a lover rather than her children.
 
 See Copeland v. Copeland,
 
 904 So.2d 1066, 1076(¶ 40) (Miss.2004);
 
 Bower,
 
 758 So.2d at 408(¶ 8). We are satisfied that the chancellor’s findings on this issue are supported by the evidence and do not amount to a sanction against Amanda for her adultery.
 

 11. Other Factors
 

 ¶ 22. The chancellor did not consider other factors relevant to the parent-child relationship.
 

 ¶ 23. We are satisfied from our review of the record that the chancellor’s decision is supported by substantial, credible evidence. We find the argument on appeal that the chancellor improperly weighed the
 
 Albright
 
 factors is without merit. Accordingly, given our limited scope of review, we cannot say that the chancellor, who was in the best position to evaluate the evidence, was manifestly wrong in finding that Rachael’s best interests would be served by awarding custody to Richard. This assignment of error is without merit.
 

 2. Whether the chancellor erred in awarding Richard full legal and physical custody.
 

 ¶ 24. Amanda argues on appeal that the chancellor abused her discretion in awarding full legal and physical custody of Rachael to Richard. Amanda asserts that the child’s interests would be better served if her parents were to share joint legal or joint physical custody.
 

 ¶ 25. This decision, however, also rests within the sound discretion of the chancellor. Amanda’s assertion that joint legal or physical custody would benefit the child is belied by testimony that the relationship between the parents has been strained by adultery. Furthermore, the supreme court has stated “it is not in the best interest of a small child to be shifted from parent to parent.”
 
 Case v. Stolpe,
 
 300 So.2d 802, 804 (Miss.1974). Rachael will soon begin kindergarten, and we have also held that the stability of one home “is crucial at the beginning stages of [a child’s] education.”
 
 Daniel v. Daniel,
 
 770 So.2d 562, 567(¶ 15) (Miss.Ct.App.2000). We can find no abuse of discretion in the chancellor’s decision to grant sole legal and physical custody of Rachael to Richard.
 

 ¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF NEWTON COUNTY IS AFFIRMED. ALL COSTS
 
 *160
 
 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Some testimony indicated that Amanda was prescribed Lexapro to treat depression; Amanda maintained that it was for general anxiety only. The chancellor apparently gave greater weight to the former.