# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00960-COA

**FARRA L. (CASSIDY) SHERIDAN**                    **APPELLANT**

**v.**

**JAMES P. CASSIDY JR.**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2017 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD SHANE MCLAUGHLIN NICOLE H. MCLAUGHLIN |
| ATTORNEYS FOR APPELLEE: | MARY MORGAN WHITFIELD CHARLES J. SWAYZE JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1. In this appeal, we must determine whether the chancellor abused his discretion in modifying custody of the parties' minor children. Finding no error, we affirm.

## PROCEDURAL HISTORY

¶2. On May 18, 2016, James Cassidy was granted a divorce from his wife, Farra (Cassidy) Sheridan on the ground of Farra's adultery. Pursuant to a child custody, support, and property-settlement agreement (PSA), Farra took physical custody of the couple's four minor

children,[1] and James agreed to pay rehabilitative alimony and child support.

¶3.   On July 19, 2016, Farra petitioned the Lafayette County Chancery Court for permission to move the children to Benton, Arkansas. James countered, requesting that he be granted custody of the children. After a hearing, the chancellor granted James's motion for custody modification and ordered Farra to pay child support. Farra now appeals, asserting the following issues: (1) there was no evidence of a material change in circumstances resulting in an adverse effect on the children; (2) the chancellor misapplied several of the *Albright*[2] factors; (3) the chancellor erred by not allowing their twelve-year-old son to state a preference; and (4) the chancellor erred by refusing to allow two of the children to testify.

**FACTS**

¶4.   After the parties' divorce, Farra began a relationship with Eric Sheridan. At the time, Sheridan was married and living in Arkansas. Sheridan testified that his wife left him after seeing text messages between him and Farra. Farra and the children drove to Arkansas frequently to visit her family and Sheridan. Because she and the children visited Arkansas on the weekends, the children were sometimes checked out early from school on Fridays and were sometimes late arriving to school on Mondays, resulting in unexcused absences.

¶5.   Sheridan and his wife divorced on January 10, 2017, and Farra and Sheridan married

---

[1] At the time of the divorce, the children were eleven years old (son), nine years old (daughter), and eight years old (twin sons). By the time of the modification hearing, all four children were one year older.

[2] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

on February 3, 2017. Farra admitted that prior to her marriage to Sheridan, she spent multiple nights with Sheridan while the children were present. A clause in the PSA prohibited either party from exposing the children to overnight visits from adult members of the opposite sex. Farra had been prescribed three medications that she took regularly—two antidepressants and one muscle relaxer. She testified that she was also prescribed Trazodone during the summer of 2016 to help her sleep. Farra further admitted to drinking between two to four beers per day and conceded that she should not be drinking alcohol while taking these medications.

¶6. Natalie Byas, an employee at the local country club, testified that she observed Farra and the children's behavior at the club. Byas stated that Farra drank excessively and appeared intoxicated at least six or seven times. Byas further stated that the children were left unsupervised, which led to destructive behavior. As a result, Byas was tasked with monitoring the children's behavior and cleaning up after them. Byas testified that the club considered barring the children.

¶7. James testified that his relationship with the children had changed since the divorce. James said the children no longer told him that they loved him. James further stated that Farra had interfered with his visitation and had refused to discuss matters involving the children, such as extracurricular activities, medical appointments, and health insurance.

¶8. Additional facts, as necessary, are related during our discussion of the issues.

## STANDARD OF REVIEW

¶9. "The standard of review in child[-]custody cases is limited. Reversal occurs only if

3

a chancellor is manifestly wrong or applied an erroneous legal standard. This Court will not reverse a chancery court's factual findings, where there is substantial evidence in the record supporting [them]. . . ." *Floyd v. Floyd*, 949 So. 2d 26, 28 (¶5) (Miss. 2007) (citation omitted).

## DISCUSSION

### I.      Modification

¶10.    "[I]n modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child." *Johnson v. Gray*, 859 So. 2d 1006, 1013 (¶33) (Miss. 2003) (internal quotation marks omitted). However, modification issues are different from original custody determinations. In order to succeed on a request for modification, "the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003). In *Riley v. Doerner*, 677 So. 2d 740, 744 (Miss. 1996), the supreme court held:

> [W]here a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. . . . A child's resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.

¶11.    The chancellor found the following amounted to a material change in circumstances: Farra's involvement with a married man; her numerous violations of the PSA, including allowing her boyfriend to spend the night while the children were present; her decision to

4

abuse alcohol while taking prescription medications; her poor financial decisions; her refusal to co-parent with James; her inciting the children to access private information on James's electronic devices; the children's school absences and tardies related to weekend trips to Arkansas; the children's living situation while visiting Arkansas; and issues with one child's failure to complete school assignments. The chancellor also had concerns about Farra's credibility.

¶12. We cannot find that the chancellor's findings regarding a material change in circumstances were manifestly wrong or clearly erroneous. We now look to whether the chancellor properly applied the *Albright* factors.

## II.  *Albright* **Analysis**

¶13. Farra argues that the chancellor erred in his *Albright* analysis. "Upon a finding of a material change in circumstances, a court is to apply the *Albright* factors to determine which parent should have primary custody." *Pearson v. Pearson*, 11 So. 3d 178, 183 (¶14) (Miss. Ct. App. 2009).

¶14. The factors used to determine what is in the best interest of a child with regard to custody are: (1) the age, health, and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the

preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). "An *Albright* analysis is not a mathematical equation." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id.* at 828 (¶21).

¶15. The chancellor found that the first, third, fifth, sixth, and eighth factors were neutral; the second favored Farra; and the remaining factors favored James. In her appeal, Farra questions the chancellor's ruling on the following factors: physical and mental health; moral fitness; and preference of the child.

### A. Physical and Mental Health

¶16. Farra argues that the proper use of prescription medications should not count against her. This is generally true. *See Kimbrough v. Kimbrough*, 76 So. 3d 715, 724-25 (¶52) (Miss. Ct. App. 2011) (There was no evidence that mother was using poor judgment in her use of medications and no evidence that the use impaired her ability to care for the minor child.). But, Farra was admittedly not properly using her prescription medications. She was drinking alcohol while on these medications. And we have upheld the chancellor's findings in a similar situation. *See Woodham v. Woodham*, 17 So. 3d 153, 158 (¶19) (Miss. Ct. App. 2009). There, the chancellor found this factor favored the father because the mother's decision to combine alcohol with antidepressants reflected poor judgment. *Id.* We cannot

find the chancellor abused his discretion in this instance.

### B.     Moral Fitness

¶17.    Farra also contends that the chancellor placed too much weight on her adultery in weighing this factor, including her pre-divorce behavior.  The chancellor found this factor favored James because he found that Farra had "committed adultery while [she was] married."  The chancellor further explained, "After you got your divorce, you started having intercourse with your boyfriend while he was married.  And you let the children reside in the same house and locale."

¶18.    After a thorough review of the record, we cannot find that the chancellor placed too much emphasis on Farra's decision to begin a relationship with a married man or on her pre-divorce behavior.  Rather, the chancellor's chief concern was Farra's decision to disregard the PSA and allow her boyfriend to spend the night while the children were present.  We cannot find the chancellor abused his discretion in finding that this factor weighed in James's favor.

### C.     Preference of the Child

¶19.    Farra claims the chancellor erred in failing to allow their twelve-year-old son to state with which parent he preferred to live.  We will discuss this issue in more detail below, but we do not find any error in this instance.

¶20.    After reviewing the record, we cannot find the chancellor abused his discretion in modifying custody.  This issue is without merit.

### III.    Preference of Twelve-Year-Old Son

7

¶21. Farra argues that the chancellor committed reversible error by refusing to allow her twelve-year-old son to state a preference. Mississippi Code Annotated section 93-11-65(1)(a) (Rev. 2013) provides that a child's preference *may* be taken into account in determining child custody:

> [I]f the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, the chancellor *may* consider the preference of a child of twelve (12) years of age or older as to the parent with whom the child would prefer to live in determining what would be in the best interest and welfare of the child. The chancellor shall place on the record the reason or reasons for which the award of custody was made and explain in detail why the wishes of any child were or were not honored.

(Emphasis added). "[T]he chancellor is not bound by the election of a minor child." *Floyd*, 949 So. 2d at 30 (¶12). But, if a chancellor declines to follow a child's preference, he must place the reasons in the record. *Id.*

¶22. During the hearing, Farra asked that the twelve year old be allowed to state his preference. The chancellor declined this request, stating that based upon prior testimony, he believed the child had been coached by Farra. The chancellor allowed Farra to make a proffer regarding the twelve year old's testimony. The proffer was as follows:

> The twelve year old loves his father, loves his mother, would love to spend time with his father. Would prefer to be in Arkansas where he has friends, where he has extended family, where he likes to do things in Arkansas in the proximity to other places that they can go in Arkansas, outside of Benton, Little Rock, etc. And all of the things that are available there that are not in Oxford. . . . He seems to think that there is a lot of stuff to do around Arkansas that is not available here.

¶23. In his *Albright* analysis, the chancellor stated that he did not allow the child to testify because he had concerns that Farra had coached the child on what to say. The chancellor

8

further stated that although this child wanted to live with Farra (based upon the proffer), "the preference of the child in this situation [did] not have much bearing on the Court with all of the factors that I have gone over thus far." Considering that the majority of the *Albright* factors favored James, we find no abuse of discretion in this instance. This issue is without merit.

## IV.    Refusal to Allow Children to Testify

¶24.    Farra also contends that the chancellor erred in summarily excluding testimony from the twelve-year-old son and the ten-year-old daughter. Farra argues that the chancellor was required to conduct a hearing pursuant to *Jethrow v. Jethrow*, 571 So. 2d 270 (Miss. 1990). In *Jethrow*, the supreme court stated that "there can be no per se prohibition against a child witness testifying in a divorce case between his parents." *Id.* at 273. There, the mother wanted to call the parties' eight-year-old child "as a witness to testify to acts of violence against her by [the father]," but the chancellor refused. *Id.* at 271. The supreme court reversed, concluding that certain procedures should be followed in deciding whether to exclude "the testimony of a child witness of tender years in a divorce proceeding." *Id.* at 273. First, determine if the child is competent to testify and second, determine whether it is in the child's best interests to testify. *Id.* at 273-74.

¶25.    Here, the chancellor did not conduct a *Jethrow* hearing, and neither party requested one. The chancellor did state that it was not in the children's best interest to testify because he thought pitting the children against the parents would be detrimental to the children. He stated, "That is not fair. This is not their fight, they didn't start it. They didn't cause the

9

divorce, they are the victims of it." The chancellor further expressed his opinion that the children had been coached, so any testimony would be unhelpful. In this instance, we find no abuse of discretion by the chancellor.

¶26. **AFFIRMED.**

**IRVING, P.J., BARNES, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND FAIR, J.; TINDELL, J., JOINS IN PART.**

**CARLTON, J., DISSENTING:**

¶27. I respectfully dissent. The chancellor abused his discretion in failing to allow the twelve-year-old son to testify regarding his preference as to custody. *Anderson v. Anderson*, 961 So. 2d 55, 59-60 (¶¶7-12) (Miss. Ct. App. 2007). In *Anderson*, this Court found that the chancery court abused its discretion in a child custody modification hearing when the chancellor failed to allow the children to testify as to their custodial preference, effectively preventing the mother from presenting her case-in-chief prior to the court entertaining the father's motion for an involuntary dismissal under Mississippi Rule of Civil Procedure 41(b). *Id.*

¶28. Similarly, the chancellor's failure to hear the testimony of the twelve-year-old child in this case not only prevented him from expressing his custodial preference, but also denied Farra the right to present her child as a witness regarding a material change in circumstances. I recognize that the version of section 93-11-65 in effect at the time *Anderson* was decided

10

has since been revised to slightly weaken the child's right to choose his custodial parent.[3]

Relevant here, however, is that under either version of the statute, and under the applicable case law, a parent is entitled to present a child's testimony regarding parental preference for custody in order to demonstrate a material change in circumstances. *Anderson*, 961 So. 2d at 59-60 (¶¶7-12); *see also Boyd v. Boyd*, 83 So. 3d 409, 418 (¶29) (Miss. Ct. App. 2011) (mother allowed to present daughter's preference testimony).

¶29.    In short, although under section 93-11-65 the chancellor does not have to honor the twelve-year-old child's preference, *see, e.g.*, *Floyd*, 949 So. 2d at 30 (¶12), the mother has a right to present the evidence at the custody hearing.  The chancellor abused his discretion in this case by declining Farra's request to present her twelve-year-old son's testimony on this issue.  I maintain that this case must reversed and remanded due to the chancellor's abuse of discretion in refusing to allow the twelve-year-old son to state his preference on the record.

**GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.  TINDELL, J., JOINS THIS OPINION IN PART.**

---

[3] In *Anderson*, section 93-11-65 (Rev. 2004) provided that "any . . . child who shall have reached his twelfth birthday *shall* have the privilege of choosing the parent with whom he shall live."  (Emphasis added).  The current statute, also in effect at the 2016 child custody modification hearing in this case, provides that if the chancellor finds the two parties fit and proper, then "the chancellor *may* consider the preference of a child of twelve . . . years of age or older as to the parent with whom the child would prefer to live in determining what would be in the best interest and welfare of the child."  Miss. Code Ann. § 93-11-65 (Rev. 2013) (emphasis added).  The statute further provides that "[t]he chancellor shall place on the record the reason or reasons for which the award of custody was made and explain in detail why the wishes of any child were or were not honored."  *Id.*