# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00708-COA

**DAVID W. HAMMONS**                                       **APPELLANT**

**v.**

**JESSICA E. HAMMONS**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2017 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | RENEE M. PORTER |
| ATTORNEY FOR APPELLEE: | ALBEN NORRIS HOPKINS JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 01/21/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.

### McCARTY, J., FOR THE COURT:

¶1. This is a case about custody modification. The Harrison County Chancery Court granted a divorce where the mother was awarded sole physical custody of the couple's two children with visitation granted to the father. Several years later, the father filed a motion seeking a custody modification. The father alleged that the environment provided by the mother was harmful to the child's best interest. The chancery court found that there was not a material change or adverse circumstances warranting modification. We agree and affirm the judgment of the chancery court.

### FACTS AND PROCEDURAL HISTORY

¶2.     Jessica and David Hammons were divorced, and afterward David married Tiffany Ladner.  Tiffany was previously married to Mike Ladner, whom Jessica Hammons is currently dating.  As the chancery court concluded, "This situation has resulted in the parties' personal lives remaining enmeshed, leaving them locked in conflict."

¶3.     After David and Jessica's contentious divorce, Jessica was given sole custody of the couple's two children: their daughter Susan, and their son B.H.H.; David was awarded visitation.[1]  Later, an agreed judgment modifying custody and visitation was entered.  Per the agreement, Jessica retained sole custody of both children, and David voluntarily gave up his week-day visitation.

¶4.     Many motions were filed in the years following the judgment of divorce.  Serving as the prelude to the present case was Jessica's motion for contempt against David.  She claimed David was in arrears for clothing- and support-related expenses and unreimbursed medical bills.  David responded with a motion for contempt, modification of custody, and temporary relief.  David also asked for Susan's emancipation and his support obligations to be set aside.

¶5.     This case is not about Susan, but the events and circumstances giving rise to her emancipation inform this appeal.  In his motion for emancipation, David claimed that he had not had visitation with Susan in years.  The alienation between father and daughter began

_____

[1] We elect to use the pseudonym "Susan" in reference to the parties' daughter for anonymity.  We will refer to the parties' son by "B.H.H." because this Court declines to identify minor children by name.

2

when Susan was picked up by the police for drinking alcohol. David reacted by screaming that Susan was "sleeping around" and that Jessica was "raising her to be a whore like you."

¶6. Four years prior to David's motion, an altercation took place in which David hit Jessica. While Susan was not present for the assault, it irreparably damaged the relationship between her and her father. Afterward, Susan refused to visit or speak with her father. Susan remains estranged from David to this day.

¶7. In support of his motion for custody modification, David claimed that B.H.H.—who was fourteen years old at the time of the motion—was experiencing problems like his sister Susan, which David attributed to Jessica's poor parenting. David alleged that Jessica "encouraged" Susan to have a sexual relationship with her boyfriend. He also maintained that Jessica condoned Susan's underage alcohol use. David's other concerns included B.H.H.'s consumption of energy drinks, his grades, and his viewing pornography.

¶8. At the conclusion of David's case, the chancery court rendered a bench opinion temporarily granting custody of B.H.H. to David. The court found that there was an "erosion" of the parental relationship between B.H.H. and David caused by Jessica, as well as an "erosion" of B.H.H.'s lifestyle. David retained custody of B.H.H. for nearly two years following the temporary order.

¶9. Subsequent to entering the temporary order, but before having rendered a final judgment, the original chancellor recused from the case. The case was reassigned to a different chancellor, who also recused. It was then reassigned to the trial judge who presided

3

over the case to its conclusion.

¶10.    After reviewing the entire extensive case file and conducting a thorough *Albright* analysis, the chancery court held that it was in B.H.H.'s best interest to return to Jessica's custody.[2]  In the final judgment, the chancery court found (contrary to David's allegations) that Jessica actually attempted to dissuade Susan from having sex.  When she was unable to do so, Jessica arranged for Susan to start using birth control.  Further, Jessica did not condone Susan's alcohol usage except while on a post-graduation cruise where she thought it was acceptable for Susan to drink.  The chancery court found that "Jessica did her best to provide a proper moral upbringing for Susan, but that Susan chose to live as she does."  Susan has since graduated high school with honors, earned her college degree, married, and become a mother.

¶11.    Importantly, the chancery court found that David had anger issues that severely interfered with his parenting skills.  The court found that both of David's children were afraid of him; he hit Jessica in front of B.H.H.; called B.H.H. a "sorry son" for not posting a picture on social media of the skateboard David had given him; and broke B.H.H.'s phone in a fit of anger.

¶12.    The final judgment was filed on June 26, 2017.  A revised judgment was filed two days later and was entered on June 29, 2017.  On July 10, 2017, David filed a motion to set aside the revised judgment and/or for a new trial and a motion to stay the revised final

---

[2] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

judgment pending appeal. The lower court found David's motions to be untimely and dismissed for lack of jurisdiction. David now appeals to this Court seeking relief.

## STANDARD OF REVIEW

¶13. "This Court will not disturb a chancellor's findings of fact when supported by substantial evidence unless the [chancery court] abused [its] discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Anderson v. Anderson*, 8 So. 3d 264, 267 (¶7) (Miss. Ct. App. 2009). "However, questions of law are reviewed de novo." *Id*.

## DISCUSSION

### I. There were no grounds to support a custody modification.

¶14. Previously, David—as the non-custodial parent—agreed to a custody and visitation modification, allowing Jessica to retain sole custody. He now wishes to modify that agreed order. The chancery court denied his motion for modification, and David requests this Court to reverse the denial.

¶15. "It is important that children have as much stability as possible when their parents are divorced." *Bowden v. Fayard*, 355 So. 2d 662, 664 (Miss. 1978). "Once the court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is." *Id*. However, there are occasions when custody modification is necessary.

¶16. Mississippi utilizes a three-prong test to determine whether custody modification is

5

warranted. First, there must be a material change in circumstances of the custodial parent. *Sheridan v. Cassidy*, 273 So. 3d 783, 786 (¶10) (Miss. Ct. App. 2018). The circumstances presented for consideration must have arisen after the entry of the first custody order. *Id*. The purpose of modification is not to allow a second bite at the apple by relitigating the same facts. *See id*. The burden of proving the material change in circumstances falls on the party seeking modification. *McDonald v. McDonald*, 39 So. 3d 868, 880 (¶37) (Miss. 2010).

¶17. Second, the moving party must show that the change in circumstances has an adverse effect on the minor child. *Sheridan*, 273 So. 3d at 786 (¶10); *Williams v. Willis*, 49 So. 3d 122, 124 (¶7) (Miss. Ct. App. 2010) ("Any change in custody must be predicated on the conduct of the custodial parent that poses a danger to the mental or emotional health of the child.").

¶18. Third, modification must be in the best interest of the minor child. *Sheridan*, 273 So. 3d at 786 (¶10). "In appeals from child-custody decisions, our polestar consideration, like the [chancery court's], must be the best interest of the child." *Lindsey v. Willard*, 111 So. 3d 1260, 1264 (¶12) (Miss. Ct. App. 2013). Determination of the child's best interest is based on an application of the *Albright* factors to the facts of the case.[3]

### A. The temporary order was not a final judgment.

¶19. David's argument is predicated, in part, on the fact that the chancery court entered a temporary order granting him custody of B.H.H. He reasons that because the chancery court

---

[3] *See supra* note 2.

ordered an immediate change in custody, it could not have reasonably declined to find a change in circumstances adverse to B.H.H.'s best interest.[4]

¶20. "A temporary custody order is just that, temporary; it does not change the underlying burden of proof." *Sanders v. Sanders*, 281 So. 3d 1043, 1054 (¶43) (Miss. Ct. App. 2019). A determination one way for a temporary order does not require the same result in the permanent order. "The [chancery court] must conduct an *Albright* analysis and decide the issue of permanent custody de novo regardless of the temporary order." *Id*. The temporary order was entered after David had concluded his argument and was based strictly on evidence he presented. At the time of the order, Jessica had not yet been given the opportunity to present her case. The chancery court did not abuse its discretion when it entered a final judgment different from the temporary order after all evidence had been presented.

### B. The environment provided by Jessica is not adverse to B.H.H.'s best interest.

¶21. David argues that evidence of an adverse effect on the child is not required and that custody should be modified because the environment provided by Jessica was adverse to B.H.H.'s interest. In support, David relies on *Riley v. Doerner*, 677 So. 2d 740 (Miss. 1996). In that case, the Supreme Court held it was not necessary to prove an adverse effect in circumstances where the child is in an inherently dangerous or unsuitable situation. *Id*. at

---

[4] This case truly started in 2014 when David filed his complaint for custody modification. The final chancellor was assigned to the case in 2016. Following his appointment, the chancellor thoroughly read the entire, lengthy record.

744. "[W]hen the environment provided by the custodial parent is found to be adverse to the child's best interest, *and* that the circumstances of the non-custodial parent have changed such that he or she is able to provide an environment more suitable than that of the custodial parent, the [chancery court] may modify custody accordingly." *Id*. For instance, "[e]vidence that the home of the custodial parent is the site of dangerous and illegal behavior, such as drug use, may be sufficient to justify a modification of custody, even without a specific finding that such environment has adversely affected the child's welfare." *Id*.

¶22. This case is distinguishable from *Riley*. There, the court found that the mother's "frequent moves, a succession of live-in boyfriends, use of drugs, etc." was inherently adverse to the minor child's best interest. *Id*. at 742. Here, David focuses on Susan's alcohol use and what he calls her "promiscuity." David submits that B.H.H.'s sister's conduct has created an adverse environment for B.H.H. The chancery court made a factual finding that this was not the case. Furthermore, Susan has since moved out, graduated college, married, and become a mother. David has failed to show the chancery court was manifestly wrong in this fact-finding.

¶23. The chancery court was within its discretion to find that David failed to prove that there was a material change in circumstances following the agreed order or that B.H.H. was in an inherently dangerous or unsuitable situation. Having failed to find grounds warranting a modification of custody, there is no need to conduct a best-interest analysis under *Albright*.[5]

_____

[5] David also argues the chancery court misapplied the facts in its *Albright* analysis. The chancery court conducted a thorough review and application of the *Albright* factors to

## II.     David's post-trial motion is not time-barred.

¶24.     David challenges the chancery court's dismissal of his post-trial motions for being untimely.  He argues that the ten-day deadline to file should be calculated from the date of the revised judgment.  Jessica counters that because there were no substantial changes to the revised judgment, the ten-day rule applies to the date of the initial final judgment.  In support, Jessica argues the general rule that "[a] final, appealable, judgment is one that adjudicates the merits of the controversy which settles all issues as to all the parties and requires no further action by the lower court." *Anderson*, 8 So. 3d at 270 (¶18) (internal quotation marks omitted).

¶25.     But the present case can be distinguished from *Anderson* by one simple fact: the chancery court in that case did not issue a revised final judgment.  *Id*.  "A final decree is one that makes an end of the controversy, determines the costs, and leaves nothing further for the court to act upon so far as the merits of the issues are concerned." *Burcham v. Estate of Burcham*, 303 So. 2d 476, 479 (Miss. 1974) (quoting Griffith, *Mississippi Chancery Practice* § 610, 650 (2d ed. 1950)).  "[H]owever, when it is necessary to add or supply in a final judgment what was omitted therefrom, the supplemental judgment is not supplemental at all—it is itself the final judgment."  James W. Shelson, *Mississippi Chancery Practice* § 33:2, Westlaw (database updated June 2019).

this case despite not being required to do so.  We find no error with the chancery court's application and findings.

9

¶26. The revised judgment reset the clock on the ten-day deadline in Mississippi Rule of Civil Procedure 59—it superseded the prior judgment. The revised judgment was filed on June 28, 2017, which extended the deadline to July 8, 2017. Because July 8, 2017, fell on a Saturday, the deadline tolled to the next business day—July 10, 2017. David filed his motions on July 10, 2017. Therefore, David's motions were timely.

¶27. David failed to demonstrate how his motion for reconsideration impacted the chancery court's decision. Further, because we have ruled on the merits of David's motions, the issue of timeliness is moot.

### III. The first chancellor's recusal was not an abuse of discretion.

¶28. David argues the original chancellor should not have recused himself. We review a judge's recusal for an abuse of discretion. *Payton v. State*, 937 So. 2d 462, 464 (¶6) (Miss. Ct. App. 2006).

¶29. According to Jessica, the original chancellor had inappropriate contact with a member of David's family. David's sister was a former court reporter for the original chancellor. Both parties were aware of this and waived any conflict. During trial, the former court reporter and her son visited the chancellor in his chambers. Even though nothing unethical or improper took place during the visit, the chancellor found the best course of action to be to recuse himself and alleviate any possible appearance of impropriety.

¶30. We cannot say that the original chancellor abused his discretion. Even though others may have disagreed, it was within his discretion, upon the unique facts of this case, to recuse

himself.

¶31.   Every person who comes before a court is entitled to a fair and unbiased judge. *Steiner v. Steiner*, 788 So. 2d 771, 775 (¶9) (Miss. 2001) ("A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality."). We presume that "the judge, sworn to administer impartial justice, is qualified and unbiased . . . ." *Id*. Here, the parties received a fair trial. The chancellor presiding over the case did so objectively and without bias. Accordingly, there was no error, and this issue is without merit.

### IV.   The monetary awards were proper.

¶32.   David argues that the chancery court erred in making the monetary awards. The chancery court found that David was entitled to a judgment from Jessica in the amount of $4,760.98 in back child support and $528.80 for unreimbursed orthodontic expenses. The court also found that Jessica was entitled to a judgment from David in the amount of $3,545.86 for past medical expenses and clothing-related expenses.[6]

¶33.   This Court will not disturb a chancellor's monetary award unless it is manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. *Kelley v. Day*, 965 So. 2d 749, 754 (¶3) (Miss. Ct. App. 2007). We find no error in the chancery

---

[6] The chancery court's final judgment had a blank for the final amount of the judgment owed from David to Jessica. During the pendency of the appeal we ordered a correction of the record under Mississippi Rule of Civil Procedure 60(a). The chancery court entered a second revised judgment correcting the clerical error.

11

court's award and affirm.

¶34. For the reasons discussed above, we affirm the chancery court's custody determination and monetary awards.

¶35. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**